1

2

3

4

5

6                        UNITED STATES DISTRICT COURT
                         WESTERN DISTRICT OF WASHINGTON
7                                   AT SEATTLE

8   JESUS MEJIA OLIVAS,

9                          Plaintiff,          Case No. C13-1304-JCC-BAT

10              v.                             **REPORT AND**
                                               **RECOMMENDATION**
11  CAROLYN W. COLVIN, Acting Commissioner
    of Social Security,
12
                           Defendant.
13

14          Jesus Mejia Olivas seeks review of the denial of his Disability Insurance Benefits

15  application.  He contends the ALJ erred by (1) discounting his credibility, (2) discounting lay

16  statements, and (3) failing to call a medical expert to testify regarding the severity of his bipolar

17  disorder during the relevant period.  Dkt. 14 at 4.  As discussed below, the Court recommends

18  the Commissioner's decision should be **AFFIRMED** and the case be **DISMISSED** with

19  prejudice.

20                                **BACKGROUND**

21          Mr. Olivas is currently 47 years old, attended nine years of school in Mexico, and has

22  worked in the United States packing shipment containers, sorting recycling materials,

23

REPORT AND RECOMMENDATION - 1

landscaping, as a construction laborer, and as a municipal recreation attendant.[1]  On April 14,

2011, he protectively applied for benefits, alleging disability as of November 15, 2005, with a

date last insured ("DLI") of December 31, 2009.  Tr. 157-58, 174.  His application was denied

initially and on reconsideration.  Tr. 84-88.  The ALJ conducted a hearing on May 1, 2012 (Tr.

31-69), and subsequently found Mr. Olivas not disabled.  Tr. 19-26.  As the Appeals Council

denied Mr. Olivas's request for review, the ALJ's decision is the Commissioner's final decision.

Tr. 1-6.

## THE ALJ'S DECISION

Utilizing the five-step disability evaluation process,[2] the ALJ found:

**Step one:**  Mr. Olivas had not engaged in substantial gainful activity during the period between his alleged disability onset (November 15, 2005) through his DLI (December 31, 2009).

**Step two:**  Mr. Olivas's bipolar disorder was medically determinable, but not severe. Therefore, he is not disabled.

Tr. 19-26.

## DISCUSSION

**1.     Credibility**

Mr. Olivas argues that the reasons provided by the ALJ for discounting his credibility

were not clear and convincing.  *See Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)

(holding that absent evidence of malingering, an ALJ must provide clear and convincing reasons

to reject a claimant's subjective description of symptoms).  The ALJ indicated that he found Mr.

Olivas's testimony to lack credibility because the scant medical evidence (which includes "very

few clinical findings, and no formal mental status examinations") during the relevant period

---

[1] Tr. 38, 174, 179.
[2] 20 C.F.R. §§ 404.1520, 416.920.

REPORT AND RECOMMENDATION - 2

1  shows that he reported a generally stable mood, despite the bipolar disorder.  Tr. 22-23.  The

2  ALJ also noted that although Mr. Olivas had been diagnosed with bipolar disorder years before

3  his alleged onset date, he had been able to work since the time of that diagnosis.  Tr. 23-24.

4       Mr. Olivas argues that the medical evidence is not as unequivocal as the ALJ found,

5  because it shows that he still experienced exacerbations of his bipolar disorder during the

6  relevant period.  Dkt. 16 at 2 (citing Tr. 255, 258, 260, 268, 302, 308).  The evidence cited by

7  Mr. Olivas that dates to the relevant period shows that when he experienced an increase in

8  symptoms due to vacations, family stress, or seasonal changes, he adjusted his medications and

9  shortly thereafter returned to stability.  The ALJ acknowledged these fluctuations in his

10  discussion of the medical evidence (Tr. 23), but interpreted those periodic adjustments to be

11  insignificant.  Tr. 22 ("[N]o significant mood swings are documented between the alleged onset

12  date and the [DLI].").  Mr. Olivas has not established that this finding is unreasonable, and it

13  should therefore be affirmed, even if Mr. Olivas urges the Court to interpret the evidence

14  differently.  *See Morgan v. Comm'r of Social Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999)

15  ("Where the evidence is susceptible to more than one rational interpretation, it is the ALJ's

16  conclusion that must be upheld.").

17       Furthermore, the ALJ cited evidence that Mr. Olivas had been able to work at a recycling

18  center in 1999-2001 (before his alleged onset date) as evidence that he could sustain work even

19  with bipolar disorder, because Mr. Olivas only left that position to pursue a higher-paying job.

20  Tr. 23-24 (citing Tr. 40).  Mr. Olivas acknowledges that he was able to work at the recycling

21  center successfully, but argues that the fact that he was terminated from other jobs due to his

22  bipolar disorder demonstrates that his bipolar disorder "impacted his ability to perform work and

23

was the leading factor in his stopping work." Dkt. 16 at 3.[3]  Mr. Olivas has not shown, however,

that the ALJ erred in considering his ability to work from 2000-2003, despite having bipolar

disorder.  An ALJ properly considers a claimant's ability to work in the past despite alleged

impairments.  *See, e.g.*, *Crosby v. Comm'r of Social Sec. Admin.*, 489 Fed. Appx. 166, 168 (9th

Cir. 2012) (affirming an ALJ's adverse credibility determination based on the fact that, *inter*

*alia*, the claimant's "longstanding conditions did not preclude work in the past"); *Porter v.*

*Astrue*, 403 Fed. Appx. 226, 228 (9th Cir. 2010) (affirming an ALJ's adverse credibility

determination where the evidence showed that the claimant "worked with essentially the same

deficits for one employer for a number of years").  Accordingly, the ALJ did not err in

considering Mr. Olivas's work history when assessing the credibility of his allegations.

Because the ALJ provided clear and convincing reasons to discount the credibility of Mr.

Olivas's allegations, the adverse credibility determination should be affirmed.

**2.     Lay Statements**

The ALJ indicated that he assigned "little probative value" to the written statements

provided by Mr. Olivas's friend Rose Delaney and his brother Jose Arnulfo Mejia, and to the

hearing testimony provided by Mr. Olivas's wife Sally Mejia.  Tr. 24-25 (citing Tr. 49-65, 239-

42).  The ALJ discounted Ms. Delaney's and Mr. Mejia's statements because they were not

linked to the relevant time period, and were inconsistent with the evidence showing that Mr.

Olivas's mood was stable during that period.  Tr. 24-25.  Likewise, the ALJ discounted Ms.

---

[3] Mr. Olivas correctly points out that the Commissioner misrepresents the record when arguing that he stopped working for reasons other than his impairments.  *See* Dkt. 16 at 3, Dkt. 15 at 5.  The ALJ himself acknowledged that Mr. Olivas was terminated from a job in 2003, but simply noted that he was able to work from 2000-2003 (including the successful two-year job at the recycling center).  Tr. 23-24.  The ALJ therefore drew a different inference from Mr. Olivas's work history (that he had been able to work in the past despite bipolar disorder) than the Commissioner offered in her briefing (that he stopped working for a reason other than his impairments).

Mejia's statement because it "may be consistent with the claimant's current level of functioning, but there is no medical evidence that would support it during the relevant time period." Tr. 25. Mr. Olivas argues that the reasons provided by the ALJ for discounting the lay witness statements were not germane. *See Smolen v. Chater*, 80 F.3d 1273, 1288-89 (9th Cir. 1996).

Mr. Olivas argues that the content of the lay witnesses' statements makes clear that they were referencing symptoms observed during the relevant period, not simply recent symptoms. Dkt. 14 at 9. He further argues that even if his mood was stable during the relevant period, he still had some limitations, including difficulty persisting, distractibility, and paranoia. Dkt. 14 at 10. Mr. Olivas contends that especially in this situation, where the medical evidence is scant, the lay witness statements "provide much-needed detail about Plaintiff's functioning[.]" *Id.*

The Court agrees with Mr. Olivas that some of the statements made by the lay witnesses indicate that the witnesses were describing current symptoms as well as symptoms during the relevant period, but the ALJ correctly noted that the medical record does not corroborate their description of severe symptoms during the relevant period. Instead, the medical evidence during the relevant period indicates that Mr. Olivas's mood was stable, he was doing "very well," and not experiencing any side effects from medication. Tr. 251-62. This evidence contradicts the lay statements regarding Mr. Olivas's manic symptoms (to the extent that the lay witnesses described symptoms occurring during the relevant period), which is a germane reason to discount the lay statements. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005). Therefore, the ALJ's assessment of the lay witness statements should be affirmed.

**3.    Medical Expert**

The only medical opinion regarding Mr. Olivas's functioning written by a treating/examining provider is dated more than two years after Mr. Olivas's DLI. Tr. 333-38.

REPORT AND RECOMMENDATION - 5

1   Mr. Olivas acknowledges that the psychological evaluation performed by Linda Jansen, Ph.D.,

2   postdates his DLI, but argues that in combination with his description of his symptoms and the

3   lay witness statements, Dr. Jansen's opinion "suggests that [his] impairment had been limiting

4   throughout the time under consideration."  Dkt. 14 at 12.  Dr. Jansen did not review any records

5   dating to the relevant time period, but instead considered only the function report completed by

6   Ms. Mejia and Mr. Olivas in January 2012.  Tr. 333.

7           The ALJ explicitly rejected Mr. Olivas's argument that Dr. Jansen's opinion was

8   probative as to his functioning during the relevant period:

> The claimant's representative has argued that there is "every reason to conclude"
> that . . . Dr. [Jansen's] assessment [is] probative of the claimant's condition
> through the [DLI].  The undersigned rejects this argument.  The claimant clearly
> has a long history of bipolar disorder, but the record also clearly documents
> improvement of his symptoms after his hospitalization in 1994, to the point that
> he was able to sustain work at substantial gainful activity levels.  Thus, it would
> not be inconsistent with the longitudinal record to find that his mood was stable
> during the relevant time period, with an increase in symptoms subsequent to the
> [DLI].  The medical evidence discussed above supports a finding that the period
> from the alleged onset date through the [DLI] was one of mood stability for the
> claimant.

15  Tr. 24.  Mr. Olivas argues that the ALJ was not qualified to determine whether the medical

16  evidence during the relevant period was consistent with Dr. Jansen's opinion, and that he should

17  have called a medical expert to do so.[4]  Dkt. 16 at 4.  He cites no authority requiring a medical

18  expert under these circumstances, and the Court is not aware of any such authority.  To the

19  extent that Mr. Olivas argues that the ALJ breached his duty to further develop the record, Dr.

20  Jansen's opinion does not create an ambiguity that should have been resolved by a medical

---

[4] In his opening brief, Mr. Olivas argues that the ALJ gave little weight to Dr. Jansen's opinion
because her evaluation "had been performed more than two years after [his DLI,]" but that
argument misrepresents the record.  Dkt. 14 at 12.  The ALJ noted that Dr. Jansen's opinion
post-dated the DLI, but went on to explain why he found that her opinion was not consistent with
the medical evidence during the relevant period.  Tr. 24.

REPORT AND RECOMMENDATION - 6

expert. *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001) ("An ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence."). Instead, an ALJ may discredit a post-DLI opinion if it is inconsistent with or unsubstantiated by medical evidence from the relevant period. *See Johnson v. Shalala*, 60 F.3d 1428, 1433 (9th Cir. 1995). Because the ALJ was entitled to evaluate whether Dr. Jansen's opinion was consistent with medical evidence from the relevant period, and Mr. Olivas has not shown that the ALJ's finding of inconsistency is unreasonable or unsupported by substantial evidence, the ALJ's assessment of Dr. Jansen's opinion should be affirmed.

## CONCLUSION

For the foregoing reasons, the Court recommends that the Commissioner's decision should be **AFFIRMED** and recommends the case be **DISMISSED** with prejudice.

A proposed order accompanies this Report and Recommendation. Objections, if any, to this Report and Recommendation must be filed and served no later than **March 28, 2014.** If no objections are filed, the matter will be ready for the Court's consideration on **March 28, 2014**. If objections are filed, any response is due within 14 days after being served with the objections. A party filing an objection must note the matter for the Court's consideration 14 days from the date the objection is filed and served. Objections and responses shall not exceed twelve pages. The failure to timely object may affect the right to appeal.

DATED this 14th day of March, 2014.

BRIAN A. TSUCHIDA
United States Magistrate Judge

REPORT AND RECOMMENDATION - 7

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23